## The People *vs.* Robert S. Watts.   *Indictment on Counterfeit Notes.*

The counsel for the defendant may ask the prosecutor any proper question to show a variance between his examination taken before a magistrate, and his evidence before the jury but he has no right to read his examination for that purpose.

ROBERT S. WATTS, apparently about twenty years of age was put to the bar, charged with passing a $3 counterfeit note of the Bank of Morris upon the person of Mr. Molahan, a respectable grocery store-keeper, at No. 53 Catharine-street, on the 20th day of September last.

He called in about dusk, and bought a few articles, and offered Molahan the note described in the indictment in payment.   Molahan hesitated to take it.   The prisoner then observed that the bill belonged to Mr. Bryan, a resident in the neighborhood, and for whom he was purchasing the goods: this quieted the mind of the prosecutor who observed if it was bad the prisoner would take it back again, and gave Watts the change, and he went away.

In two or three days after, the prosecutor received in payment for some trifling articles bought out of his store, two other $3 counterfeit bank bills of the same bank and description as those passed upon him by the prisoner, from a Susan Brown, a young, artless girl who had been set to work by the prisoner in this business. She was arrested, examined, and committed to Bridewell for trial. While in confinement she confessed that she passed the two counterfeit bills upon the prosecutor, at the request and by the direction of the prisoner.

NEW-Y ORK,
Oct. 1822.

The People
*vs.*
R. S. Watts.

The police-officers then went in pursuit of Watts, and found him in Hester-street, a few doors above Ludlow, at the dinner table, with Augustus K. M'Lane and his wife, (formerly Mrs. Severance,) but who now passed herself as M'Lane's wife. The officers arrested them all; and upon searching the house, two rolls of counterfeit bank-paper of the same description and denomination as that passed upon Molahan, were found concealed in the cornice of the door of their room. They were brought to the police-office, and M'Lane and Watts committed for trial.

Susan Brown testified that she had been acquainted with the prisoner, that he had paid his addresses to her for some time past; that one evening as she was sitting on her mother's stoop, the prisoner came up to her and told her to go to Molahan's and pass to him a $3 note, which he at the same time handed her, telling her she would not be hurt. She went to the store and purchased a few candles and gave Molahan the note, and received the change. The next day he gave her another counterfeit note, and told her to go to the same or any other place she chose and pass it off. She went to the same place and offered the note; she was then arrested as has been mentioned and committed.

The prosecutor identified the note passed upon him by

NEW-YORK, Watts, having put his name, upon the back of it at the
Oct. 1822.
──────── time he received it, and the prisoner, as being the same

The People  person that passed it upon him.
    vs.
James Smith.    *Price*, counsel for the prisoner, declined any remarks to
──────── the jury.

    *By the Court.*—" It appears absolutely certain, from the
" evidence offered, that the prisoner is one of those gang
" of counterfeiters and venders of counterfeit money, that
" infest the city with loads of spurious paper : he employ-
" ed a young artless girl, to whom he was paying his ad-
" dresses at the very time, to assist him in his criminal
" pursuits, and who is ruined by his arts."

    The jury found him guilty, without leaving the box.

    During the examination of the prosecutor, *Price*, offered
to read his examination taken before the committing mag-
istrate, declaring he varied in his testimony before the
court and jury from that detailed in the examination.

    *Maxwell, District Attorney*, objected.

    *By the Court.*—" You may ask the prosecutor any
" question you choose, to show a variance between the
" examination taken before the police and his testimony
" before the jury, but you have no right to read his exam-
" ination for that purpose."